UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CHRISTOPHER D.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO.  3:21cv81 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for a period of disability and Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 423(a).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

2. The claimant has not engaged in substantial gainful activity since April 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: torn esophagus/strictures with tube implantation and subsequent removal, pancreatitis, epilepsy, attention deficit and hyperactivity disorder (ADHD), and adjustment disorder with anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift/carry and push/pull up to 20 pounds occasionally and up to 10 pounds frequently. He can stand/walk for up to six hours of an eight-hour workday and sit for up to six hours of an eight-hour workday with normal breaks. He can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. He can have no exposure to unprotected heights, moving mechanical parts, open flames, open pools of water, or sharp instruments such as knives or box cutters. He can do no commercial driving. He can carry out simple tasks with simple work-related decisions and judgments performing these tasks with adequate pace, persistence, and concentration in two-hour segments allowing for normal breaks. He can perform low-stress work such as no assembly lines and no hourly quotas but he can meet end of the day expectations. He can tolerate occasional interaction with supervisors and coworkers. He can have no interaction with the public as part of the job duties. He can tolerate changes in a routine work setting consistent with simple work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 15, 1976 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-27).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff filed his opening brief on November 12, 2021.  On January 24, 2022, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on February 14, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff was born on September 15, 1976 and was 42 years old on the date he filed for disability benefits. He has past relevant work as a supervisor delivery driver and a bartender.

Plaintiff was hospitalized from April 12, 2019, through May 13, 2019, likely because he did not take antibiotics as prescribed after a dental procedure and, after presenting to the emergency room, was found to be septic with an esophageal perforation. (Tr. 21, 274–76). He underwent procedures to drain an esophageal abscess as well as placement of a feeding tube and an esophageal stent. (Tr. 21, 274–75). This hospitalization was lengthy in part due to complications from alcohol withdrawal, including Plaintiff having a seizure as well as becoming agitated and removing his feeding tube, causing significant vomiting that dislodged the esophageal stent resulting in need for further surgical procedures. (Tr. 21–22, 275). An esophagram prior to discharge showed no obstruction and interval healing of the rupture. (Tr. 275, 472). At the time of discharge, Plaintiff needed to continue using the feeding tube until revaluation by his surgeons. (Tr. 21–22, 275).

Plaintiff was evaluated at the end of May 2019. (Tr. 22, 472–73). He denied gastrointestinal symptoms and was tolerating his tube feedings. (Tr. 22, 472, 855). Physical examination findings were normal, including an "excellent" swallow study. (Tr. 22, 472–73, 855–56). An esophagram showed no leak. (Tr. 22, 506, 521, 856). Plaintiff was cleared for a full liquid diet. (Tr. 473, 485, 854–56, 862).

On follow-up in July 2019, an esophagram showed no leak, but showed delayed transit though a narrowing of the esophagus. (Tr. 503, 586). An upper endoscopy showed a benign

5

esophageal stricture, a small hiatal hernia, and a mild gastric deformity. (Tr. 22, 826–27). Plaintiff was cleared to advance to a soft, low residue diet and to resume prior physical activity. (Tr. 826). Plaintiff underwent two upper endoscopy procedures with dilation of the esophageal stricture in August 2019 (Tr. 818–25) and another in September 2019, and he was cleared to resume his prior diet and resume prior physical activity. (Tr. 22, 865–68).

In September 2019, Plaintiff sought emergency room treatment for two weeks of abdominal pain around the site of the feeding tube. (Tr. 22, 655–58, 962–65). There was no evidence of infection and he was discharged with instructions to follow-up with his surgeon and gastroenterologist (*id*.). Two days later, Plaintiff saw the surgeon. (Tr. 896–98, 903–04). Plaintiff was eating well, putting on weight, and not using the feeding tube anymore, so it was removed (*id*.). Plaintiff had endoscopies with dilation in October 2019 (Tr. 910–14, 985–96), November 2019 (Tr. 955, 1014-15), and April 2020 (Tr. 951), with no mention in the record of complications or particular abdominal or other pain complaints.

Meanwhile, in November 2019, Plaintiff sought treatment in the emergency department for two days of severe rectal pain, but the doctor's assessment was that Plaintiff's reported pain was "out of proportion" to what the examining doctor expected and found physically. (Tr. 992–93). A CT scan ruled out any abscess and Plaintiff was discharged home with a topical hydrocortisone medication. (Tr. 993–94, 997).

In June 2020, Plaintiff presented to Dr. Robert Cassady to establish primary care. Dr. Cassady noted "tear of esophagus" which he deemed "chronic" and "this does not sound controlled." (Tr. 1020). Dr. Cassady concluded Plaintiff had "steady, slow improvement" but "still has chronic GI issues."

6

On July 21, 2020, Dr. Cassady completed a residual functional capacity questionnaire on Plaintiff's behalf. Dr. Cassady opined Plaintiff's "daily" and "diffuse" abdominal pain would cause "constant" interference with Plaintiff's ability to maintain concentration because his "gastrointestinal symptoms come on even with light activity." (Tr. 1029-1030). He further concluded Plaintiff was incapable of even "low stress" jobs due to his epigastric impairments. *Id*. He likewise opined that the same symptoms would result in more than four absences from work per month. (Tr. 1032).

In August 2020, Plaintiff saw his gastroenterologist and reported intermittent nausea, vomiting, and diarrhea that were accompanied by rectal bleeding when they occurred. (Tr. 1115). The doctor noted that Plaintiff's problematic stooling patterns were either irritable bowel syndrome or pancreatic insufficiency, and planned to obtain stool studies and, if negative, treat Plaintiff with fiber supplements and a laxative. (Tr. 1116).

In support of remand, Plaintiff first argues that the ALJ erred by not including time off task due to Plaintiff's gastrointestinal and abdominal symptoms. Plaintiff points out that the ALJ found Plaintiff's torn esophagus/strictures and pancreatitis as "severe" impairments, but did not include any limitations specifically related to these impairments in the RFC. The Commissioner notes that "there is virtually no evidence of record of contemporaneous reports [of debilitating nausea, abdominal pain and vomiting] after Plaintiff's initial hospitalization". Plaintiff, however, counters that there must have been contemporaneous evidence of his gastrointestinal problems, because the ALJ found his torn esophagus/strictures and pancreatitis as "severe" meaning that they significantly limited his ability to do basic work activities. 20 CFR §416.920(a)(4)(ii). There is, indeed, an inconsistency in the ALJ's decision as it includes severe impairments with no

7

corresponding RFC limitations. Thus, remand is warranted so that the ALJ can reassess Plaintiff's impairments, and if any are "severe", provide the appropriate limitations in the RFC.

Plaintiff raises a related argument, which concerns the weight given to Dr. Cassady's opinion. Dr. Cassady opined Plaintiff's "daily" and "diffuse" abdominal pain would cause "constant" interference with Plaintiff's ability to maintain concentration because his "gastrointestinal symptoms come on even with light activity." (Tr. 1029-1030). Dr Cassady also opined that the same symptoms would result in more than four absences from work per month. (Tr. 1032).

> In his decision, the ALJ discussed Dr. Cassady's opinion as follows:
>
> In July 2020, Dr. Robert Cassady opined the claimant that the claimant [sic] would have constant pain and that he is incapable of low stress jobs (Exhibit 15F). He could sit for 10 minutes at a time and stand for 15 minutes at a time. He could sit/stand/walk for less than two hours. He would require periods of walking for 10 minutes. The claimant would require unscheduled breaks every 30 minutes. He does not need a cane for ambulation. He can occasionally lift 10 pounds. He can occasionally look down, look up, and hold his head in a static position. He can frequently turn his head right or left. He could rarely stoop, crouch, and squat. He could occasionally twist and climb stairs. The claimant has significant limitations with reaching, handling, or fingering, limited to 5% of use. He would be absent more than four days per month. His opinion is not supportable because although he identified the claimant's symptoms as fatigue, difficulty swallowing, insomnia, and anxiety, the restrictions were musculoskeletal/pain-related in nature. In addition, Dr. Cassady noted that he only met with the claimant once for 30 minutes. His opinion is not consistent with the record because the claimant's musculoskeletal exams were mostly normal, except for an intermittently abnormal gait (Exhibit 16F/6) and according to his most recent exam in August 2020 the claimant had no tenderness and had a normal gait (Exhibit 17F/2). Therefore, I do not find Dr. Cassady's opinion persuasive.

(Tr. 24).

Although Dr. Cassady's opinion is weak and at least partly inconsistent with the record, the ALJ's stated basis for rejecting the opinion are not "good reasons". *Scott v. Astrue*, 647 F.3d

734, 739 (7th Cir. 2011). Dr. Cassady referenced Plaintiff's "tear in esophagus", noted Plaintiff had fatigue and "pain with palpation at abdomen", and that pain would constantly interfere with Plaintiff's attention and concentration. The ALJ failed to address these points. Thus, remand is required for a re-evaluation of Dr. Cassady's opinion.

Next, Plaintiff argues that the RFC failed to fully account for his moderate limitation in concentration, persistence and pace. With respect to Plaintiff's mental abilities and limitations, the ALJ limited Plaintiff to carrying out simple tasks with simple work-related decisions and judgments performing these tasks with adequate pace, persistence, and concentration in two-hour segments allowing for normal breaks; performing low-stress work such as no assembly lines and no hourly quotas, although he could meet end-of-the-day expectations; tolerating occasional interaction with supervisors and coworkers, but no interaction with the public as part of the job duties; and tolerating changes in a routine work setting consistent with simple work. (Tr. 20). Plaintiff alleges that this assessment does not account for the ALJ's finding that Plaintiff had "moderate" limitations in his ability to concentrate, persist, or maintain pace. (Tr. 19).

The ALJ found that Plaintiff's severe impairments included ADHD and an adjustment disorder with anxiety. (Tr. 17, 809). The ALJ then evaluated the severity of these mental impairments in accordance with the regulations. (Tr. 19). As noted, the ALJ found that Plaintiff had a "moderate" limitation in his ability to concentrate, persist, or maintain pace. (Tr. 19). The ALJ found that Plaintiff remained mentally capable of work as long as he was limited to simple work and reduced interaction with others. (Tr. 25). Plaintiff, however, contends that the RFC should have provided for off-task time. Clearly, this issue is intertwined with the issues above concerning the physical RFC and Dr. Cassady's opinion. After the ALJ re-evaluates his decision

9

on those two issues, then the ALJ should revisit the "concentrating, persisting, maintaining pace" issue.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: February 22, 2022.

                                              s/ William C.  Lee
                                              William C. Lee, Judge
                                              United States District Court